UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JERRY BEEBE,                         Case No. 08-14995

        Plaintiff,                    David M. Lawson
v.                                           United States District Judge

THOMAS BIRKETT, TIM BEAVERS,                 Michael Hluchaniuk
WILLIE O. SMITH, GERRY WYMA,                 United States Magistrate Judge
and DAVE BURNETT,

        Defendants.
_____/

## REPORT AND RECOMMENDATION
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 17)

## I.    PROCEDURAL HISTORY

This is a prisoner civil rights matter referred to the undersigned by District

Judge David M. Lawson for all pretrial purposes. Plaintiff claims that defendants

violated his constitutional rights by denying him access to certain religious services

and the Kosher meal program. (Dkt. 1). Defendants filed a motion for summary

judgment on June 15, 2009. (Dkt. 17). Plaintiff filed a response on July 8, 2009.

(Dkt. 23). Defendants filed a reply on July 31, 2009. (Dkt. 27). Plaintiff filed a

sur-reply on August 10, 2009. (Dkt. 18). This matter is now ready for report and

recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED** in part and **DENIED** in part and that defendants Smith and Birkett be **DISMISSED** from this matter.

## II.    STATEMENT OF FACTS

Plaintiff alleges that his First Amendment rights were violated when he was denied access to the Kosher Meal Program at ICF between the dates of August 18, 2004 and April 9, 2008.  Plaintiff further alleges that after he was transferred to SMF, his First Amendment rights were violated when he was denied access to weekly Jewish group services at SMF between the dates of April 9, 2008 and October 10, 2008.  Plaintiff seeks injunctive relief ordering his placement on a Kosher Meal Program and compensatory and punitive damages.

Under MDOC policy and procedure, an inmate may seek approval to eat from a religious menu.  Approval will be granted if the inmate establishes that his request is based on a sincerely held religious belief and if the requested diet is necessary to the practice of the inmate's designated religion.  The inmate submits a written request to the prison Warden or the Warden's designee, generally the facility Chaplain.  The Chaplain interviews the inmate to obtain information regarding his request and religious beliefs, then refers a recommendation regarding the request to the warden, who then forwards a recommendation to MDOC's

Special Activities Coordinator, who grants or denies the request and notifies the prison Warden.

As of March 25, 2002, plaintiff identified his religion as Jewish at Carson City Correctional Facility (DRF). Following plaintiff's first application for the Kosher Meal Program on April 2, 2002, Special Activities Director, defendant Dave Burnett denied plaintiff's application. Plaintiff's second application to the Kosher Meal Program was approved by defendant Burnett on October 24, 2003; Plaintiff remained on the Kosher Meal Program until he was paroled from DRF on May 19, 2004. Following a parole violation unrelated to this lawsuit, plaintiff was returned to the custody of the MDOC at Charles Egeler Reception and Guidance Center (RGC) on June 30, 2004. Plaintiff alleges that, while he was at RGC, he was forced to limit his food intake because he was denied a kosher diet, resulting in a weight loss of 30 pounds in 48 days. Plaintiff's medical records indicate that on intake dated July 1, 2004, plaintiff was classified as "overweight" at 228 pounds. The medical records show that plaintiff lost twenty-four pounds in less than three months following his intake. Defendants assert, however, that there is nothing to support his contention that the cause was lack of a kosher diet. Plaintiff did not indicate to medical personnel that the weight loss was related to his lack of kosher foods. Also, between September 2004 and December 2004, plaintiff's weight went back up to 225 pounds; by December 2005, plaintiff's weight was up to 253

pounds, yet, he still was not on the Kosher Meal Program between September 2004 and December 2005.

On his arrival at Ionia Maximum Correctional Facility (ICF) in August 2004, plaintiff was placed in Administrative Segregation for a period of approximately one year. Plaintiff alleges that defendants Warden Smith and Chaplain Wyma ignored his kites and refused to allow him to apply to the Kosher Meal Program at ICF during his time in Administrative Segregation. Neither defendant Smith nor Wyma have any record of these alleged kites. Plaintiff further alleges that, after his release from Administrative Segregation in June 2005, defendant Burnett authored several memoranda to defendant Smith with regard to plaintiff's requests, instructing defendant Smith to interview plaintiff for the Kosher Meal Program; plaintiff claims to have copies of these memoranda but has not produced them. Defendant Burnett, however, has no knowledge of any correspondence between himself and defendant Smith instructing Smith to arrange a Kosher Meal Program interview in 2005. Defendant Burnett's only correspondence with plaintiff was on October 8, 2004 in response to a letter from plaintiff requesting to return to the Kosher Meal Program. In pertinent part, defendant Burnett's response states, "I am requiring that you go through the review process again . . . [p]lease write to your warden, requesting admission to the Kosher meal program . . . [b]y copy of this letter, I am making your warden aware

of this decision." Defendant Smith was sent a copy of this letter. However, plaintiff did not write to the Warden after October 8, 2004 and he did not re-apply for the Kosher Meal Program until December 2007, almost three years later.

On December 7, 2007, defendant Wyma interviewed plaintiff for the Kosher Meal Program. According to defendants, the interview was consistent with the MDOC Operating Procedure. Plaintiff was given an opportunity to answer the three required questions in a written statement. On December 13, 2007, defendant Burnett reviewed plaintiff's request and recommended to defendant Smith that it be denied. Defendant Burnett's denial recommendation was based on plaintiff's inability to provide adequate information regarding the Jewish faith and its dietary requirements. Specifically, in response to "what is a Kosher diet," plaintiff responded, "food that is prescribed in Judaism, food that is blessed," and, "meat that is killed in a prescribed way." Defendants Burnett and Smith acknowledged that plaintiff's statements were not untrue, but failed to indicate that he had learned sufficient information about keeping Kosher.

Because plaintiff was not satisfied with the result of his application in 2007, he sent correspondence to defendants Wyma, Smith, and Burnett indicating that he believed defendant Wyma's instructions to keep the answers short had caused him to be denied, plaintiff attached a detailed description about keeping Kosher. Defendant Wyma responded that defendant Burnett's decision was final and

plaintiff would have to wait until December 13, 2008 to re-apply, in accordance with the MDOC's Policy Directive.  Plaintiff was not able to submit another application until December 13, 2008.  Plaintiff was transferred to SMF on April 9, 2008.  He did not re-apply when he became eligible in December 2008.

On January 17, 2008, plaintiff filed a grievance based on his belief that he was unfairly denied the Kosher Meal Program.  Plaintiff's grievance was denied at Steps I, II, and III of the grievance process because Plaintiff failed to show a violation of policy.  Plaintiff alleges that his First Amendment rights to freely exercise his religion were violated by his denial to the Kosher Meal Program while at ICF.

Plaintiff was transferred from ICF to Standish Maximum Correctional Facility (SMF) on April 9, 2008.  He claims that he was denied Jewish group worship services at SMF.  The MDOC Policy Directive requires a minimum of five prisoners of the same religion and security clearance requesting a service before group religious services for that religion will be scheduled and held.  SMF's Operating Procedure is more liberal in that only three prisoners must request a group service before one will be scheduled and held.  Between April 9, 2008 and October 10, 2008, plaintiff was the only General Population prisoner to request a Jewish group service, accordingly, none was held.  Although there was a Jewish group service held for Protective Custody prisoners, due to the required physical

separation of Protective Custody prisoners, plaintiff was not eligible to attend because he was a General Population prisoner.

On October 10, 2008, defendant Beavers received three additional General Population prisoner requests for a Jewish group service. Plaintiff was added to the callout for the Jewish group service, which has been held weekly since October 10, 2008 with one exception. On October 24, 2008, due to confusion and miscommunication, the Jewish group service was accidentally cancelled by defendant Beavers. Other than that one cancellation, plaintiff has attended weekly services since October 10, 2008.

Plaintiff filed a Grievance on June 26, 2008 based on his belief that defendants Beavers and Birkett were denying him his right to attend a weekly religious service in accordance with his Jewish faith. Plaintiff's grievance was denied at Steps I, II, and III of the grievance process because plaintiff failed to show a violation of policy. Plaintiff alleges that his First Amendment rights to freely exercise his religion were violated because there were no weekly Jewish services held between April 9, 2008 and October 10, 2008.

## III.    ANALYSIS AND CONCLUSIONS

### A.    Standard of Review

Summary judgment is appropriate under Rule 56(b) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment. "When opposing parties tell two different stories,

one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1774, 1776 (2007).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co.*

*v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-226 (6th Cir. 1994). *See Tolliver v. Federal Republic of Nigeria*, 265 F.Supp.2d 873, 879 (W.D. Mich. 2003). Thus, "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Id*., quoting, *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (internal citation and quotation marks omitted).

      B.      <u>First Amendment and RLUIPA</u>

          1.      Legal principles

Prison inmates are entitled to the protection of the First Amendment, including the free exercise clause. *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). However, an inmate's constitutionally protected rights, including his First Amendment rights, must be balanced against the institution's need to maintain security and order within the prison. In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court held that prison regulations may infringe on a prisoner's constitutional rights as long as they are rationally related to a legitimate penological concern. In the context of the First Amendment free exercise clause, "[a] prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own

scheme of things' and is 'sincerely held.'" *Flagner v. Wilkinson*, 241 F.3d 475,

481 (6th Cir. 2001), quoting, *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir.

1987). "A religious belief which is not sincerely held or a belief which is purely

secular does not require the prison to consider accommodation." *Mosier v.*

*Maynard, D.O.C.*, 937 F.2d 1521, 1526 (10th Cir. 1991), citing, *Johnson v. Moore*,

926 F.2d 921, 923 (9th Cir. 1991).

The RLUIPA states in pertinent part:

> No government shall impose a substantial burden on the
> religious exercise of a person residing in or confined to
> an institution ... even if the burden results from a rule of
> general applicability, unless the government
> demonstrates that imposition of the burden on that person
> (1) is in furtherance of a compelling governmental
> interest; and (2) is the least restrictive means of
> furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Thus, a more stringent, less deferential standard is

applied to a RLUIPA claim (the least restrictive means of furthering a compelling

governmental interest) than to a First Amendment § 1983 claim (reasonably related

to legitimate penological interests). *See Cutter v. Wilkinson*, 544 U.S. 709 (2005).

Under RLUIPA, the initial burden of showing a substantial burden on a religious

practice lies with the plaintiff. 42 U.S.C. § 2000cc-2(b).[1] The burden then shifts to

---

[1] In *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009), the Sixth Circuit
held that the Eleventh Amendment bars claims for money damages in official
capacity suits against state officials. Money damages suits against state officials in
their individual capacities, while never specifically address by the Sixth Circuit

the government to demonstrate that the compelling interest test is satisfied. *See id*.

A governmental practice, decision or regulation imposes a "substantial burden" on

the exercise of religion "if it truly pressures the adherent to significantly modify his

religious behavior and significantly violate his religious beliefs." *Adkins v.*

*Kaspar*, 393 F.3d 559, 569-70 (5th Cir. 2004). Stated differently by the Seventh

Circuit, "a substantial burden on religious exercise is one that necessarily bears

direct, primary, and fundamental responsibility for rendering religious exercise ...

effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*,

342 F.3d 752, 761 (7th Cir. 2003).

Thus, once it is determined that a regulation imposes a substantial burden on

a prisoner, the review of that burden under the Free Exercise Clause differs from

RLUIPA. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 814 (8th Cir. 2008),

citing, *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005). Such reviews need not be

reached where the plaintiff "has not put forth sufficient evidence that a reasonable

---

(*Heard v. Caruso*, 2009 WL 26298293 (6th Cir. 2009)), is seemingly permissible.
*See e.g. Atkins v. Christiansen*, 2009 WL 4042756 (W.D. Mich. 2009). The Sixth
Circuit has at least implicitly acknowledged that a RLUIPA action can be brought
against defendants named in their individual capacities. *See Figel v. Overton*, 263
Fed.Appx. 456, 458-459 (6th Cir. 2008), applying a qualified immunity analysis to
a RLUIPA claim. Qualified immunity is a defense only available to individual
defendants, not to a state or municipality, or defendants sued in their official
capacities. *Kentucky v. Graham*, 473 U.S. 159 (1985); *Farnsworth v. Baxter*, 2007
WL 2793364, *2 (W.D. Tenn. 2007).

jury could conclude that his ability to practice his religion has been substantially burdened." *Patel*, 515 F.3d at 814.

2.      Kosher meals program

Before the *Turner* analysis comes into play, however, plaintiff must make a threshold showing that the practice he is being denied is motivated by his religious beliefs, and that those beliefs are sincerely held. *Bonnell v. Burnett*, 2009 WL 909572, *5 (E.D. Mich. 2009), Report and Recommendation Adopted in Part, Rejected in Part , 2009 WL 909575 (E.D. Mich. 2009), citing, *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (*en banc*).  "Without doubt, prison officials are entitled to assure themselves of a prisoner's sincerity of religious belief as a prerequisite to their considering a request for accommodation." *Ketzer v. Williams*, 2008 WL 4534020, at *21 n. 11 (W.D. Mich. Sept. 2008); *McManus v. Bass*, 2006 WL 753017, at *6 (E.D. Va. 2006) ("In the context of religious dietary requests, prison officials must regularly assess the sincerity of an inmate's religious beliefs to prevent prisoners from bringing false claims under the guise of religion.").  The Establishment Clause of the First Amendment prohibits inquiry into the truth or validity of a religious belief; thus, while "the 'truth' of a belief is not open to question," a court may ask whether the professed belief "is 'truly held.'" *Bonnell*, at *5, quoting, *United States v. Seeger*, 380 U.S. 163, 185 (1965).

Contrary to the argument presented in the bulk of the briefs, the issue in this case is not whether Operating Procedure 05.03.150 is a constitutionally legitimate means of determining whether a prisoner holds a sincere belief that his religion requires that he maintain a kosher diet. Under *Turner*, a prison may legitimately provide a system for determining the sincerity of a prisoner's professed religious belief, and Operating Procedure 05.03.150 has been held to be a constitutional means for making this determination. *Bonnell*, at *6, citing, *McQuitter v. Burnett*, 2008 WL 45341110, *10 (W.D. Mich. 2008); *Adams v. Burnett*, 2007 WL 329992, *5 (W.D. Mich. 2007). Thus, the real issue in this case is whether the decision made by the defendants pursuant to the procedure passes constitutional muster. As the Sixth Circuit observed in a case involving the procedure at issue here, "[t]he fact that the procedure may pass constitutional muster, however, does not mean that every decision reached in accordance with the procedure will necessarily pass constitutional muster." *Ben-Yahudah v. Bolden*, 1996 WL 571145, at *4 (6th Cir. 1996).

Importantly, in considering these questions it must be kept in mind that the sincerity of a person's religious belief is a question of fact. *See Seeger*, 380 U.S. at 185. Further, the question of the sincerity of plaintiff's belief is a question which goes to plaintiff's state of mind. Although "[c]ases involving state of mind issues are not necessarily inappropriate for summary judgment," *Street v. J.C. Bradford &*

*Co.*, 886 F.2d 1472, 1479 (6th Cir. 1988) (footnote omitted), as a general matter summary judgment will rarely be appropriate on state of mind issues. *See Helwig v. Pennington*, 30 Fed.Appx. 516, 518-19 (6th Cir. 2002); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993). Defendants offer one short paragraph in their motion for summary on this issue:

> To the extent that Plaintiff claims Defendants Burnett, Smith, and Wyma violated his First Amendment rights by applying MDOC Operating Procedure 05.03.150A regarding the Kosher Meal Program, Plaintiff's claim also fails. In *O'Lone v. Estate of Shabazz*, the Supreme Court reiterated that the court should refuse, even in alleged First Amendment violations, to substitute its own judgment on difficult and sensitive matters of institutional administration for the determinations of those charged with the formidable task of a running a prison. Defendants have shown that the MDOC Operating Procedure is related to legitimate penological concerns, thus the court ought to give deference to those decisions of the Defendants.

(Dkt. 17, p. 9). The undersigned suggests that defendants have entirely failed to analyze whether the decision made to deny plaintiff access to the Kosher Meal Program passes constitutional muster and summary judgment on this issue should be denied without prejudice.

3. Statute of limitations

Defendants argue that, to the extent that plaintiff's claims accrued before December 2, 2005 are barred by the statute of limitations. Statutes of limitation are established to extinguish rights, justifiable or not, that might otherwise be asserted. *Kavanagh v. Noble*, 332 U.S. 535, 539 (1947). They are designed, among other things, to compel plaintiffs to exercise their rights of action within a reasonable time; to protect potential defendants from the protracted fear of litigation; and to promote judicial efficiency by preventing defendants and courts from having to litigate stale claims. *Moll v. Abbott Labs.*, 444 Mich. 1, 14, 506 N.W.2d 816 (1993); *see also, U.S. v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 503 (6th Cir. 1998). As such, these statutory restrictions are not simply technicalities; rather, they are fundamental to a well-ordered judicial system. *Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 487 (1980).

Because Congress did not specifically adopt a statute of limitations governing § 1983 actions, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003), citing *Wilson v. Garcia*, 471 U.S. 261, 275-276 (1985). The Sixth Circuit has held that the "appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims."

*Drake v. City of Detroit, Michigan*, 266 Fed.Appx. 444, 448 (6th Cir. 2008), citing,

Mich. Comp. Laws § 600.5805(10); *Chippewa Trading Co. v. Cox*, 365 F.3d 538,

543 (6th Cir. 2004); *see also Owens v. Okure*, 488 U.S. 235, 249-250 (1989)

(Where "state law provides multiple statutes of limitation for personal injury

actions, courts considering § 1983 claims should borrow the general or residual

statute for personal injury actions.").

The characterization of a claim, including the determination of when the

cause of action accrued, is determined by federal law. *Wallace v. Kato*, 549 U.S.

384, 388 (2007). The statute of limitations begins to run under federal law "when

plaintiffs knew or should have known of the injury which forms the basis of their

claims." *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). "In determining when

the cause of action accrues in section 1983 actions, [courts] have looked to what

event should have alerted the typical lay persons to protect his or her rights."

*Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997). For

example, a first amendment claim accrues at the latest when the government

official informs the plaintiff that he would not be granted a formal hearing and that

the official considers the matter closed. *Jiqiang Xu v. Michigan State University*,

195 Fed.Appx. 452 (6th Cir. 2006); *see also Manning v. Bolden*, 25 Fed.Appx. 269

(6th Cir. 2001) (Where a prisoner claims retaliation by his classification to

administrative segregation, his First Amendment claim accrued when he was reclassified.).

Defendant has offered evidence that, on plaintiff's arrival at Ionia Maximum Correctional Facility (ICF) in August 2004, plaintiff was placed in Administrative Segregation for a period of approximately one year. While plaintiff alleges that defendants Warden Smith and Chaplain Wyma ignored his kites and refused to allow him to apply to the Kosher Meal Program at ICF during his time in Administrative Segregation, neither defendant Smith nor Wyma have any record of these alleged kites. And, while plaintiff further alleges that, after his release from Administrative Segregation in June 2005, defendant Burnett authored several memoranda to defendant Smith with regard to plaintiff's requests, instructing defendant Smith to interview plaintiff for the Kosher Meal Program, defendants have no such records. Plaintiff claimed to have copies of these memoranda but has not produced them. Defendant Burnett's only correspondence with plaintiff was on October 8, 2004 in response to a letter from plaintiff requesting to return to the Kosher Meal Program. In pertinent part, defendant Burnett's response states, "I am requiring that you go through the review process again . . . [p]lease write to your warden, requesting admission to the Kosher meal program . . . [b]y copy of this letter, I am making your warden aware of this decision." Defendant Smith was sent a copy of this letter. However, plaintiff did not write to the Warden after

October 8, 2004 and he did not re-apply for the Kosher Meal Program until December 2007, almost three years later.

In response, plaintiff argues that the denial of access to the Kosher Meal Program from 2004 forward is a "continuing violation" that is not barred by the statute of limitations. The Sixth Circuit holds that § 1983 claimants are "precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." *Baar v. Jefferson County Bd. of Educ.*, 311 Fed.Appx. 817 (6th Cir. 2009), citing, *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). Plaintiff claims that he "attempted to gain access" to the Kosher Meal Program throughout this time period, but he offers no corroborating evidence. Even in his affidavit, plaintiff alleges an attempt to correspond with defendant Burnett about this issue in June 2005 and then does not allege any further "attempts to gain access" to the Kosher Meals Program until November 2007, well over two years later. The undersigned suggests that plaintiff cannot sit on his rights for over two years and then claim a "continuing" violation in order to preserve claims that accrued more than three years before he filed his complaint. These are discrete acts and plaintiff has offered no proof that they are sufficiently related to warrant application of the continuing violation doctrine. *See Sharpe*, 319 F.3d at 268-269. Based on the foregoing, the undersigned suggests that

Report and Recommendation
Motion for Summary Judgment
*Beebe v. Birkett*; Case No. 08-14995

defendants' motion for summary judgment on plaintiff's First Amendment Kosher Meals Program claims accruing before December 2, 2005 be granted.

### 4.   Religious services

The "group of five" policy has already been deemed constitutional by the Sixth Circuit. *Spies v. Voinovich*, 173 F.3d 398, 404-05 (6th Cir.1999) (prison regulation that five documented members of faith be interested in forming faith group before such groups could be formed did not violate Free Exercise clause). Thus, like the Kosher meals policy, the question before the Court is whether defendants' application of this policy to plaintiff passes constitutional muster.

According to defendants, during the relevant time period between April 9, 2008 and October 10, 2008, plaintiff was the only General Population prisoner who requested a weekly Jewish group service. When defendant Beavers received the three additional requests for such a service on October 10, 2008, one was scheduled and weekly services have been held since. Defendants argue, therefore, that plaintiff's lack of access to a weekly service between April 9, 2008 and October 10, 2008 was related to legitimate penological concerns and was not a constitutional violation.

Defendants also argued that, on October 24, 2008, defendant Beavers accidentally cancelled the weekly Jewish service that plaintiff attended, based on confusion and miscommunication. Defendants assert that plaintiff's lack of access

to one weekly religious service because of a mistake cannot plausibly give rise to a constitutional violation when MDOC Operating Procedures and SMF Policy Directives, based on legitimate penological concerns, may warrant not holding services at all when there are not a minimum number of prisoner requests. Furthermore, defendant Beavers acknowledges that although he made a scheduling mistake, he had no affirmative intent to violate the rights of plaintiff. According to defendants, this mistake amounts to, at most, negligence and negligent conduct on the part of a state official is insufficient to sustain a Constitutional violation.

In response, plaintiff offers the affidavits of seven Jewish prisoners he claims also requested Jewish services. Plaintiff's affidavits do not, however, satisfy Rule 56(e)(1) because they are not given under oath and the documentation referred to in the affidavits (the requests for religious services during the relevant time period) is not attached. More importantly, plaintiff offers no evidence that these affiants were documented members of the Jewish faith, in compliance with MDOC policy. Thus, plaintiff has made no showing that the "group of five" policy was actually satisfied during the relevant time period and his proffered evidence does not rebut defendants' showing that they did not have five documented members of the Jewish faith requesting services in that time frame.

With respect to defendant Beaver's proffer that the cancellation of the one Jewish service was a miscommunication error and that at best, it constitutes

negligence, plaintiff asserts that he does not believe defendant Beaver's story.

Plaintiff suggests that the mistake excuse could only be plausible if all other

religious services had likewise been cancelled in error that same day. The

undersigned suggests that causing the cancellation of a single religious service in

error is insufficient to sustain a constitutional violation. *See Murphy v. Grenier*,

2009 WL 1044832, *6 (E.D. Mich. 2009) (Temporary interference with plaintiff's

First Amendment right was the result of negligence, which is not actionable under

§ 1983.). The undersigned also suggests that plaintiff has not proffered any

evidence to create a material issue of fact that the cancellation was anything other

than a temporary interference resulting from a negligent error.

    C.    <u>Personal Involvement</u>

    Liability in a § 1983 action cannot be based on a theory of *respondeat*

*superior*. *See Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 691

(1978). "[T]he mere right to control without any control or direction having been

exercised and without any failure to supervise is not enough to support § 1983

liability." *Id.* at 694 n. 58, citing, *Rizzo v. Goode*, 423 U.S. 362, 370-371 (1976).

As the Sixth Circuit has stated:

> Section 1983 liability will not be imposed solely upon the
> basis of respondeat superior. There must be a showing
> that the supervisor encouraged the specific incident of
> misconduct or in some other way directly participated in
> it. At a minimum, a § 1983 plaintiff must show that a

> supervisory official at least implicitly authorized,
> approved or knowingly acquiesced in the
> unconstitutional conduct of the offending subordinate.

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995), quoting,

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Several cases from the Sixth Circuit provide guidance on a supervisory

liability claim. For example, the court has stated that "[p]laintiff must prove that

[the supervisor defendants] did more than play a passive role in the alleged

violations or show mere tacit approval of the goings on. Plaintiff must show that

the supervisors somehow encouraged or condoned the actions of their inferiors."

*Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (internal and

external citations omitted). Furthermore, the Sixth Circuit has stated:

> Supervisor liability [under § 1983] occurs either when
> the supervisor personally participates in the alleged
> constitutional violation or when there is a causal
> connection between actions of the supervising official
> and the alleged constitutional deprivation. The causal
> connection can be established when a history of
> widespread abuse puts the responsible supervisor on
> notice of the need to correct the alleged deprivation, and
> he [she] fails to do so. The deprivations that constitute
> widespread abuse sufficient to notify the supervising
> official must be obvious, flagrant, rampant, and of
> continued duration, rather than isolated occurrences.

*Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002), quoting, *Braddy v. Fla.*

*Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). Also, the

Court has held that where the defendants' "only roles ... involve the ... the failure to act ... they cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Id*. at 300, citing, *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). "[A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

According to defendants, plaintiff has made no allegation or showing that defendants Smith or Birkett participated in, acquiesced in, authorized, or encouraged denial of plaintiff's request to be placed on the Kosher Meal Program or to attend weekly group services. Moreover, plaintiff has not shown that Wardens Smith or Birkett had actual knowledge of a breakdown in the proper

working of the department and failed to perform their own specific duties in the face of such actual knowledge. According to defendants Smith and Birkett, they essentially serve as a conduit between the prisoner and the Chaplain, who interviews the prisoner, and the prisoner and the Special Activities Director, who grants or denies the application. In response, plaintiff reiterates his general complaints about denial of access to the Kosher meals program, but offers no argument or evidence that defendants Smith or Birkett were sufficiently personally involved in that alleged denial. The undersigned suggests that plaintiff has failed to show that defendants Smith or Birkett were sufficiently personally involved in any decision to deny plaintiff request to participate in the Kosher meals programs and these defendants should be dismissed from this suit.

D.     Injunctive Relief

In his complaint, plaintiff seeks injunctive relief ordering his placement on the Kosher Meal Program at SMF. He has not moved for an injunction. The undersigned suggests that summary judgment on plaintiff's ultimate claim for a an injunction ordering his placement on the Kosher meal program is premature given the unresolved issues on the merits of plaintiff's timely asserted Kosher meal claim (as opposed to those barred by the statute of limitations) on which defendants have not yet moved for summary judgment. *See e.g. F.T.C. v. Medical Billers Network, Inc.*, 543 F.Supp.2d 283, 323 (S.D.N.Y. 2008) (Where the plaintiff's claims have

not been completely resolved on summary judgment, the scope of any permanent injunction that may ultimately issue was undetermined and entry would be premature).

E.      Eleventh Amendment

Plaintiff alleges in his complaint that the suit is against defendants in their official and personal capacities. A suit against a public official in their "official capacity" is a suit against the public entity that employs the public official. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008), citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In this case, defendants are employed by the State of Michigan so a suit against them in their official capacity is a suit against the State of Michigan. "The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." *Id.* The record does not indicate that the State of Michigan has waived its immunity or otherwise consented to being sued and, therefore, the claim cannot be maintained against defendants in their official capacity. However, the Eleventh Amendment does not bar suit against defendants in their individual capacity under 42 U.S.C. § 1983.

F.      Qualified Immunity

Defendants claim to be entitled to qualified immunity regarding their actions in this case. The doctrine of qualified immunity means that "'[g]overnment

officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992), quoting, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants bear the burden of pleading qualified immunity, but plaintiff bears the burden of showing defendants are not entitled to qualified immunity. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).

The Supreme Court had established a two-part test in order to determine whether qualified immunity was applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194 (2001). The first part of the test involved a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. at 201. If the first question was resolved in the affirmative then the court would decide "whether the right was clearly established." *Id*. If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

Recently, the Supreme Court revisited their decision in *Saucier* and concluded that mandatory order of the two part test for determining if qualified immunity applied was no longer sound based on several factors including judicial economy. *Pearson v. Callahan*, — U.S. —, 129 S.Ct. 808 (2009). While not

modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test. In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without having to engage in the perhaps more complicated decision of determining whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established where lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."

The undersigned suggests that, given the foregoing conclusions regarding plaintiff's claims regarding religious services, defendants are entitled to qualified immunity on those claims. Given the foregoing conclusions as to plaintiff's claims regarding the Kosher meal program (not otherwise barred by the statute of limitations), the undersigned cannot say that the remaining defendants are entitled to qualified immunity. *Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989) (When "the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury," the "jury becomes the final arbiter of [a] claim of immunity."); *Bouggess v. Mattingly*, 482 F.3d 886, 888 (6th Cir. 2007).

## IV.    RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED** in part and **DENIED** in part. Specifically, the undersigned **RECOMMENDS** that (1) summary judgment be **GRANTED** to all defendants regarding plaintiff's First Amendment claims involving religious services; that summary judgment be **GRANTED** to all defendants regarding plaintiff's First Amendment claims involving the Kosher meal program that accrued before December 2, 2005; and that summary judgment be **DENIED** to all defendants as to plaintiff's First Amendment claims involving the Kosher meal program that accrued on or after December 2, 2005.  The undersigned further **RECOMMENDS** that defendants Smith and Birkett be **DISMISSED** from this matter with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401

(6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Administrative Order 09-AO-042.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 22, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on February 22, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Julia R. Bell</u>, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>Michael Beebe, 6149 Horger Street, Dearborn, MI 48126</u>.

s/Tammy Hallwood
Case Manager
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
